## State v. Lewis
[Cite as 8 AOA 185]

Case No. 1920, 1924, 1943
Lawrence County, (4th)
Decided December 14, 1990

J. Stewart Kaiser, Prosecuting Attorney, Richard Kennedy and Donald R. Capper, Assistant Prosecuting Attorneys, Ironton, Ohio, for Appellant.

Charles R. Burd, Chesapeake, Ohio, for Cross-Appellant in Case No. 1920.[1]

Arthur P. Anninos, Cincinnati, Ohio, for Cross-Appellant in Case Nos. 1924 & 1943.

STEPHENSON, J.

This case involves the consolidation of an appeal and two cross-appeals taken from various judgments entered by the Common Pleas Court of Lawrence County.[2] In Case No. 1920, the State of Ohio (hereinafter referred to as "the state"), plaintiff below and appellant herein, appeals from a judgment of the trial court which dismissed, for lack of a speedy trial under R.C. 2945.71, the fourth count of the indictment below against David Lewis (hereinafter referred to as "Lewis"), defendant below and cross-appellant herein. From that judgment, the state assigns the following errors:

I. "The trial court erred in dismissing Count Four of the indictment for violation of

the speedy trial provisions of Section 2945.71, Ohio Revised Code, since time does not commence under the statute until arrest on the last indictment."

II. "The trial court erred in dismissing Count Four of the indictment since any delay in the Defendant-Appellee's indictment on the charge alleged was caused by the improper acts of the accused."

In Case No. 1924, Lewis appeals from a judgment of the trial court, entered upon a jury verdict, finding him guilty of rape in violation of R.C. 2907.02. From that judgment, Lewis assigns the following errors:[3]

I. "THE COURT ERRED IN OVERRULING THE POST-CONVICTION MOTION OF THE DEFENDANT SEEKING A NEW TRIAL BECAUSE OF THE FAILURE OF THE PROSECUTION TO DISCLOSE EXCULPATORY EVIDENCE THAT HAD BEEN REQUESTED BY THE DEFENDANT PURSUANT TO THE DISCOVERY PROCEDURES PRESCRIBED BY THE CRIMINAL RULES. IT IS NOW BEYOND ARGUMENT THAT THE FAILURE OF THE PROSECUTION TO DISCLOSE EXCULPATORY EVIDENCE TO THE PLAINTIFF IS A DENIAL OF DUE PROCESS AND REQUIRES THE REVERSAL OF A CONVICTION."

II. "IT WAS PLAIN ERROR FOR THE COURT TO RECEIVE INTO EVIDENCE THE WRITTEN STATEMENT AND THE RAPED [sic] ORAL STATEMENT THAT MRS. LEWIS GAVE TO LAW ENFORCEMENT ON JULY 12, 1978 BECAUSE THE ABOVE STATEMENTS ARE HEARSAY, WERE NOT GIVEN UNDER OATH AT AN ADVERSARIAL AND ARE NOT OTHERWISE ADMISSIBLE."

III. "THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING THE LETTER WRITTEN BY THE DEFENDANT TO HIS WIFE ON JULY 20, 1978 BECAUSE ITS CONTENTS ARE HEARSAY AND THE LETTER ITSELF AS ADMITTED WAS PREJUDICIAL TO THE DEFENDANT'S CASE."

IV. "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR ACQUITTAL AS THE EVIDENCE SEEN IN A LIGHT MOST FAVORABLE TO THE STATE AND FREE FROM OUTSIDE INFLUENCES IS SUCH THAT IT LEAVES REASONABLE MINDS WITH A REASONABLE DOUBT."

V. "THE COURT ERRED IN EXCLUDING AN EXPERT WITNESS' CIRRICULUM [sic] VITAE AS AN EXHIBIT AFTER THE EXPERT HAD RELATED HIS QUALIFICATIONS IN PART BEFORE GIVING OPINION TESTIMONY."

VI. "THE VERDICT OF THE JURY IN THIS CASE IS VOID BY REASON OF THE PROSECUTOR'S MISCONDUCT IN CLOSING ARGUMENT TO THE PREJUDICE OF THE DEFENDANT."

VII. "THE DEFENDANT WAS PREJUDICED BY INEFFICIENCY OF COUNSEL BY FAILING TO OBJECT TO THE INTRODUCTION INTO EVIDENCE OF HIGHLY PREJUDICIAL AND INADMISSIBLE EVIDENCE."

VIII. "THE TRIAL COURT IN ALLOWING THE LAWRENCE COUNTY SHERIFF TO PARTICIPATE IN THE TRIAL OF THIS CASE BY ALLOWING HIM TO OCCUPY A SEAT AT THE PROSECUTION TABLE COMMITTED REVERSIBLE ERROR BECAUSE SUCH AN ACT IS IN CONFLICT WITH HIS POSITION AS THE CHIEF EXECUTIVE IN THE SERVICE OF THE COURT AND BECAUSE IT VITIATES THE GUARANTEE OF A FAIR TRIAL."

In Case No. 1943, Lewis appeals from a judgment of the trial court overruling his motion for leave to file a motion for a new trial. From that judgment, Lewis assigns the following error which we renumber to follow the sequence of his other assignments of error:[4]

IX. "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR LEAVE TO FILE A MOTION FOR A NEW TRIAL BECAUSE THE DEFENDANT SHOWED THAT HE COULD NOT HAVE FILED SUCH MOTION WITHIN THE TIME ALLOWED BY CRIMINAL RULE 33 AND BECAUSE HE PRESENTED THE TRIAL COURT THE NECESSARY PREDICATE TO RENDER THE JUROR INCOMPETENT TO TESTIFY."

The record reveals the following facts pertinent to this appeal. On December 18, 1976,

Lewis allegedly assaulted a Mr. Todd Sites in violation of R.C. 2903.11. This alleged incident was twice considered by a Lawrence County grand jury in late 1976 and in early 1977, but in both instances no indictment was returned. On July 12, 1978, Lewis allegedly raped his minor stepdaughter, Kimberly Sue Johnson n.k.a. Kimberly Johnson Hill, in violation of R.C. 2907.02. At the time this accusation was made, Lewis was not put under arrest and in late August of 1978, he departed Lawrence County, Ohio, accompanied by his wife and son, and eventually moved to Nashville, Tennessee. On October 6, 1978, the Lawrence County grand jury returned a five count indictment against Lewis. Count one of said indictment was based on the previously mentioned rape accusation and count four was based on the previously mentioned assault allegation.

A warrant was issued on the indictment and Lewis was ultimately arrested in Tennessee on February 24, 1989. Thereafter, he was returned to Lawrence County for trial. On July 31, 1989, Lewis filed a motion to dismiss the fourth count (assault) of the indictment on the basis that the state had failed to comply with the provisions of R.C. 2945.71 (C)(2) in that the state had failed to bring him to trial within two hundred seventy (270) days after his arrest. On August 11, 1989, the trial court entered judgment sustaining the motion and ordering the assault count be dismissed with prejudice. The state filed its notice of appeal to such judgment on August 28, 1989, and appellate Case No. 1920 follows.

On August 31, 1989 the rape count of the indictment was brought to a jury trial.[5] On September 6, 1989, the jury returned a verdict finding Lewis guilty of rape as charged in the indictment. On September 12, 1989, a judgment was entered by the court upon the jury's verdict, but sentencing was deferred until a later date. The following events occurred thereafter on September 15, 1989. First, Lewis filed a motion which, although styled as a motion for post conviction relief, in substance asked for a new trial pursuant to Crim. R. 33 on the grounds that, *inter alia,* the state had suppressed certain exculpatory evidence and the court had improperly refused to admit certain evidence. At the sentencing hearing held later that day, the court acknowledged that such motion was, in essence, one for a new trial and it was overruled. Still later that day a sentencing entry was filed which formally overruled

the motion. Contemporaneously with the sentencing entry, Lewis filed his notice of appeal from the conviction and thus follows appellate Case No. 1924.

On November 6, 1989, Lewis filed a motion for leave to file a motion for a new trial. The basis for the motion for new trial was alleged juror misconduct and, in arguing that he had been unavoidably prevented from filing such motion within the time constraints of Crim. R. 33(b), Lewis contended that he had just come into possession of the evidence which allegedly established such misconduct. A hearing was held on this motion on January 5, 1990, and on January 12, 1990, the court entered judgment denying the motion on the grounds that the alleged misconduct was "insufficient to warrant a further examination of the jurors in this case in order to disturb the jury verdict."[6] On January 17, 1990, Lewis filed his supplemental notice of appeal to that judgment and, thus, Case No. 1943 follows. Additional facts shall be provided herein where they are pertinent to resolving a particular assignment of error.

Proceeding in numerical case order, we shall first consider the state's assignments of error. In its first assignment of error, we perceive the state's argument to be that the "speedy trial" provisions of R.C. 2945.71 are tolled after a grand jury fails to indict an arrested party and the criminal case against that party is then dismissed. We agree.

The Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 10, Article I of the Ohio Constitution, guarantees a criminal defendant the right to a speedy trial by the state. *State v. O'Brien* (1987), 34 Ohio St. 3d 7, 8. In *Barker v. Wingo* (1972), 407 U.S. 514, 523, the United States Supreme Court declared that, with regard to fixing a time frame for speedy trials, "[t]he States ... are free to prescribe a reasonable period consistent with constitutional standards ..." To that end, the Ohio General Assembly enacted R.C. 2945. 71, *see* Am. Sub. H.B. No. 511 (134 Ohio Laws, Part II, 1866, 1996), in order to comply with the *Barker* decision. *O'Brien, supra* at 8.

The requirement of R.C. 2945.71(C) (2) is that a person against whom a charge of felony is pending shall be brought to trial within two hundred seventy (270) days after his arrest. The cause *sub judice,* appearing to be a case of first impression, posits the issue of whether the dismissal of a criminal case, so that *felony*

*charges are no longer pending,* tolls the running of the speedy trial statute. We hold in the affirmative.

On its face, R.C. 2945.71(C) (2) clearly provides that the two hundred seventy day period after arrest applies only to one "against whom a charge of felony is *pending* ..." (Emphasis added.) Manifestly, when a grand jury refuses to indict a person and the court subsequently dismisses the criminal case against him, then a felony charge is *no longer pending* against that individual and the time under R.C. 2945.71 ceases to run.

In *Westlake v. Cougill* (1978), 56 Ohio St. 2d 230, 233, the Supreme Court noted that the time between dismissal of an action and the service of summons on the second action, under the same charge, was not counted for purposes of R.C. 2945.71 because *"no charges were pending* ... during this period."* (Emphasis added.) Similarly, in *State v. Stephens* (1977), 52 Ohio App. 2d 361, 371, the Cuyahoga County Court of Appeals held that "[i]f the defendant is released without bail upon a dismissal of the original indictment, the defendant is not entitled to have time between the dismissal and the reindictment included under R.C. 2945.71 because during such period *no charge was pending.* " (Emphasis added.)

In his supplemental brief,[7] Lewis attempts to distinguish *Stephens,* and would presumably attempt to distinguish *Westlake,* on the grounds that such case(s) involved a dismissal *nolle prosequi* whereas the cause *sub judice* did not. We are not persuaded that there is any substance to such a distinction. The end result, in either event, is that *no criminal charge remains pending.* There is no practical difference, as a means to reaching that end, between a *nolle prosequi* and dismissal after a grand jury fails to return an indictment.

In sum, R.C. 2945.71(C) (2) requires both a pending felony charge and an armrest in order to come under the two hundred seventy daytime period within which the state must bring a criminal defendant to trial.[8] In the case below, the record suggests that the first assault charge against Lewis was dismissed at some time in early 1977. There being no pending criminal charge against him after that time, we hold that the time period under R.C. 2945.71(C) (2) stopped running. The two hundred seventy day period would recommence when Lewis was arrested on the indictment in 1989.

This result is consistent with the policy underlying both the constitutional right to a speedy trial as well as R.C. 2945.71. As stated previously, the purpose in enacting that statute was to comply with the parameters announced by the United States Supreme Court in *Barker.* See *O'Brien, supra* at 8. In *Barker, supra* at 532, it was stated that the right to a speedy trial was designed to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused and to limit the possibility that the defense will be impaired. *Also see Smith v. Hooey* (1969), 393 U.S. 374, 378; *United States v. Ewell* (1966), 383 U.S. 116, 120. Similarly, this court has previously stated that the constitutional underpinning for an accused's right to a prompt trial is that a felony charge "may seriously interfere with the defendant's liberty, whether he is free on bail or not,and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *State v. Cattee* (1983), 14 Ohio App. 3d 239, 242-243 at fn. 2.

However, Lewis was no longer subject to such infringements on his liberty after the assault charge, and criminal case against him, were dismissed in 1977. Accordingly, he had no need for the protection afforded by the requirement of a speedy trial. On the basis of the foregoing, the state's first assignment of error is sustained.

In its second assignment of error, the state argues that under R.C. 2945.72(D), the time within which Lewis could be brought to trial was extended because Lewis allegedly suborned perjury and intimidated witnesses testifying before the grand jury thereby impeding the issuance of an indictment. This same argument was raised below and supported by an affidavit of Kimberly Hill. The state contends that this affidavit establishes that Lewis avoided indictment by improper activity and thus the time under R.C. 2945.71 was tolled. We disagree.

First, Kimberly Hill's affidavit sheds no light whatsoever on the mental processes involved with the grand jurors when they refused to indict Lewis. Presumably, more than just her testimony was considered by them. Second, her allegations, though under oath, were not subject to cross-examination and, therefore, do not establish misconduct as an irrefutable fact as the state would so subscribe. Third, it appears that the court below afforded little consideration, if any, to this evidence which was im-

properly before it. We can discern no error in this regard and the state's second assignment of error is overruled.

We now turn to those errors assigned by Lewis in the order previously set forth. In his first assignment of error, Lewis contends that the state suppressed material evidence that could have affected the outcome of the case. The basis for this argument arises as a result of a report from the Ohio Bureau of Criminal Investigation (hereinafter referred to as "BCI") which the state provided in response to a discovery request. This report listed items of clothing, linen from the bed where the alleged rape occurred and the "Johnson rape kit" used at the hospital when Kimberly Hill was brought there for examination. This report indicated that these items were examined by BCI, but stated that "[n]othing of apparent evidential value derived from these examinations." Thereafter, Lewis requested that the state produced these items but no production was forthcoming.

Although the state maintains that this evidence had been lost over the previous eleven years, Lewis contends that this evidence was potentially crucial to his defense and that the state's failure to produce it was tantamount to an unlawful suppression in violation of his due process rights. In particular, Lewis focuses on the missing pair of jeans and argues that Kimberly Hill's testimony of a button being ripped off those jeans during the alleged attack was directly contradicted by testimony of former state's investigator Sam Hazlett. Lewis further argues that had those jeans been produced at trial with its button intact, it would have established the "unimpeachable truth," presumably exonerating him. Lewis concludes that the failure to produce these items requires a reversal of the judgment and conviction below. We disagree.

In the recent decision of *Arizona v. Youngblood* (1988), 488 U.S. ___, 102 L. Ed. 2d 281, the United States Supreme Court held as follows:

"The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant *material exculpatory evidence*. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have

exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in *Trombetta, supra*, at 486, 81 L Ed 2d 413, 104 S Ct 2528, that '[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.' Part of it stems from our unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause, *see Lisenba v. California*, 314 US 219, 236, 86 L Ed 166, 62 S Ct 280 (1941), as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially useful evidence* does not constitute a denial of due process of law." (Emphasis added.)

Although *Youngblood* dealt with a situation where the prosecutor failed to preserve evidence, as opposed to *Brady v. Maryland* (1962), 373 U.S. 83 and *State v. Johnson* (1988), 39 Ohio St. 3d 48 which both dealt with suppression of evidence, the Supreme Court's reliance on *Brady* would seem to indicate that the same standards are to apply in either situation.[9] The critical importance of *Youngblood* is that it differentiates, for purposes of due process analysis, between "material exculpatory" evidence and "potentially useful" evidence Thus, if the prosecution suppresses, or fails to preserve, *material exculpatory* evidence then a criminal defendant's due process rights have been violated. However, the suppression or failure to preserve *potentially useful* evidence violates constitutional due process only upon a showing of bad faith.

Therefore, the pivotal inquiry is whether that evidence suppressed, or lost, by the State in the cause *sub judice* was materially exculpatory and, if not, was it suppressed or lost in bad faith. We answer both inquiries in the negative.

To begin, the *Youngblood* decision did not expound upon constitutional materiality, *see Id.* at 295-298 (Blackmun, J. Dissenting) and thus we are controlled by the standard set forth in *Johnson, supra* at paragraph five of the syllabus (citing *U.S. v.* Bagley (1984), 473 U.S. 667) as follows:

"[E]vidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense."

We are not persuaded that there is a reasonable probability that, had those items of evidence been disclosed to Lewis, the result of the trial below would have been any different. As stated previously, the strongest argument made by Lewis concerns the pair of jeans worn by Kimberly Hill on the date of the alleged rape. Had Lewis been able to show the jury that pair of jeans with no missing button, one may speculate that it could have changed the outcome of the trial. Even so, such evidence is best characterized as being only "potentially useful."

Furthermore, we are not persuaded that the missing pair of jeans had any particular exculpatory value in the first place. Lewis argues that because the alleged victim testified to a button being ripped off her jeans at the time of the attack and because the prosecutor made reference to the button during his closing argument, the existence of these jeans with its buttons intact would have exonerated the appellant. For several reasons, we are not persuaded by this argument.

First, the obvious advantage of this evidence to Lewis is in its use to impeach the credibility of Kimberly Hill. Even if Kimberly Hill were shown to have lied, or been mistaken about a button being ripped off her jeans, it does not necessarily follow that a jury would be convinced that she had lied about the alleged rape. We note the abundance of other impeachment evidence introduced which, such evidence notwithstanding, obviously did not convince the jury that the rape charge had been fabricated.[10]

Second, appellant introduced testimony from witness Sam Hazlett, who was formerly an investigator for the Lawrence County Prosecuting Attorney. Mr. Hazlett testified at length for appellant concerning this missing evidence and further stated that the jeans worn by Kimberly Hill, on the night of the alleged rape, were neither torn nor missing a button. Moreover, this testimony, as well as the alleged victim's past history for credibility were continually emphasized during closing arguments. Nonetheless, the jury refused to draw the inference that the rape charge had been fabricated.

Finally, we question appellant's argument that such evidence is exculpatory because Kimberly Hill testified that the button was ripped off her jeans during the alleged rape and that the prosecutor relied on this during closing argument. In our review of the transcript, we are unable to pinpoint any such testimony. Indeed, Kimberly Hill appears to have testified only as follows:

"Q. After he threw you on the bed, what did he do?

"A. He took my pants off of me.

"Q. And how did he get your pants off of you?

"A. He ripped them off of me and they didn't completely rip off but he jerked them off of me.

"Q. What type of pants did you have on?

"A. Jeans.

"***

"Q. When your mother came home, (and we're going forward to July the 12th, 1978 which you've already testified about), when your mother came home that evening, when you had the conversation with her, what did you do then after having those conversations with your mother?

"A. I was in the bathroom when she came home from work that evening and she came into the bathroom and asked me what was wrong, and I told her that nothin' was wrong and then she went, she went to the bedroom I guess to change her clothes and she *found a button off my pants in her room,* then she brought it back into the bathroom where I was and then she said, 'now you tell me what happened; I want to know now', so I told her." (Emphasis added.)

Furthermore, the State's reference to this "missing" button, in closing argument, was as follows:

"You recall Kim's testimony. The way that her mother discovered this was that there was a button found in the mother's bedroom. Right here it is on the BCI report, 'button found in floor of bedroom floor', and her mother asked

her about that, and that's what led her to tell her mother on July 12th, 1978 about what was happening."

Thus, while there is sufficient testimony of *a button* on the floor, there is no testimony linking that button to the specific pair of jeans worn by her at the time of the alleged rape. Indeed, there is no testimony as to which pants the button may have come from. Furthermore, we cannot find any testimony by Kimberly Hill, as Lewis contends, wherein she alleges that Lewis ripped a button off of her jeans. To be sure, the alleged victim testified that he had ripped her pants off of her. Presumably, however, such an act is possible without ripping off a button.

In sum, we are unable to conclude that the evidence lost or suppressed herein was materially exculpatory.[11] The Ohio Supreme Court handed down its decision in *Johnston, supra,* less than two months prior to the United States Supreme Court decision in *Youngblood, supra.* Therefore, no distinction was made, in *Johnston,* between materially exculpatory evidence and that which is only potentially useful. Nevertheless, on issues concerning federal constitutional rights, we are bound by decisions of the Supreme Court of the United States irrespective of whether that decision has been adopted by the Supreme Court of Ohio. Accordingly, we overrule the first assignment of error.

We shall jointly consider the second and third assignments of error made by Lewis wherein he contends that the state's use of prior statements made by Linda Lewis and a letter written by David Lewis created prejudicial error. We disagree. In *State v. Sage* (1987), 31 Ohio St. 3d 173, at paragraph two of the syllabus, the Ohio Supreme Court stated that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." Because of the broad discretion of the trial court, we cannot reverse on appeal unless the court so abused its discretion that prejudicial error intervened. *State v. Graham* (1979), 58 Ohio St. 2d 350, 352. In reviewing the record we can find no such abuse of discretion.

In *State v. Theuring* (1988), 46 Ohio App. 3d 152, 155, the court held that when extrinsic evidence of a prior inconsistent statement is offered into evidence pursuant to Evid. R. 613(B), a foundation must be established in which:

"(1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement."

A review of the record reveals that the state established the proper foundation before seeking admission of both Linda Lewis' prior statement and the letter written by David Lewis. Furthermore, Lewis did not object to the state's use of either the prior statements or the letter during the questioning of Linda Lewis or David Lewis. Therefore, Lewis waived any error resulting from the use of the statements. *See State v. Lancaster* (1971), 25 Ohio St. 2d 83 at paragraph one of the syllabus. Although Lewis contends that the admission of the evidence constituted plain error, the Ohio Supreme Court has held that "[n]otice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St. 2d 91 at paragraph three of the syllabus; *State v. Lott* (1990), 51 Ohio St. 3d 160, 164.

We do not find that the admission of the prior statements and the letter constituted plain error. The second and third assignments of error are, therefore, overruled.

In his fourth assignment of error, Lewis argues that the trial court erred in overruling his motion for acquittal under Crim. R. 29 at the close of the state's case and again at the close of all the evidence. We disagree. The standard for ruling on a motion for acquittal was set out in the syllabus of *State v. Bridgeman* (1978), 55 Ohio St. 2d 261, as follows:

"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

Kimberly Hill testified at length about appellant's actions in forcing her to have sexual intercourse. That testimony, if believed, was sufficient to prove each element of the offense of rape. There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction. *See State v. Love* (1988), 49 Ohio App. 3d 88, 91; *State v. Gingell* (1982), 7 Ohio App. 3d 364, 365. Thus, the court

correctly ruled that the trier of fact could appropriately determine guilt or innocence. Lewis's fourth assignment of error is overruled.

In his fifth assignment of error, Lewis argues that the trial court erred, in refusing to allow into evidence, the curriculum vitae of witness Larry Dehus. However, we note that the trial transcript reveals that Mr. Dehus was requested, and permitted, to "run through" his curriculum vitae while testifying on direct examination. A trial court has discretion to exclude evidence if its probative value is substantially outweighed by consideration of needless presentation of cumulative evidence. Evid. R. 403(B). Absent a clear and prejudicial abuse of discretion, a trial court's determination not to admit evidence shall not be reversed on review. *O'Brien v. Angley* (1980), 63 Ohio St. 2d 159, 163; *Parma v. Manning* (1986), 33 Ohio App. 3d 67, 69. In light of the same evidence being adduced by testimony of Mr. Dehus, we cannot conclude that it was a clear and prejudicial abuse of the trial court's discretion to exclude his curriculum vitae, assuming *arguendo;* such evidence was admissible in the first place. Lewis's fifth assignment of error is, therefore, overruled.

In the sixth assignment of error, Lewis argues that during closing argument, the state commented extensively on the credibility of David and Linda Lewis. The comments included statements that both of them testified falsely during the trial. Lewis contends the prosecutor's statements created prejudicial error. We disagree.

In *State v. Smith* (1984), 14 Ohio St. 3d 13, 14, the Ohio Supreme Court stated as follows:

"The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."

We agree with Lewis that it was improper for the prosecutor to express his personal belief as to the credibility of the witnesses. However, Lewis did not object to any of the statements he has cited as being improper. As stated previously, a failure to object waives the error, *Lancaster, supra* at paragraph one of the syllabus, unless it is plain error under Crim. R. 52. Plain error is error which is so prejudicial to the accused, which, if the conviction is allowed to stand, would have a substantial adverse impact on the integrity of the trial. *See State v. Stover* (1982), 8 Ohio App. 3d 179, 183. Our

review of the record has not persuaded us that the comments were so prejudicial to Lewis as to warrant a reversal. Thus, Lewis's sixth assignment of error is overruled.

In his seventh assignment of error, Lewis contends that his trial counsel's failure to object to the use of inadmissible evidence warrants a reversal of his conviction. We disagree.

The standard for evaluating claims of ineffective assistance of counsel was set out by the U.S. Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 687. This standard was, subsequently, adopted by the Ohio Supreme Court in *State v. Smith* (1985), 17 Ohio St. 3d 98, 100 as follows:

"In *Strickland v. Washington* ... the United States Supreme Court adopted a two-pronged analysis for determining whether counsel's assistance was so defective as to require reversal of a conviction[.]

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable .

"The court also noted that counsel is 'strongly presumed' to have rendered adequate assistance, and 'the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'" (Citations omitted.)

We have reviewed the record and do not believe the matters cited by Lewis meet the *Strickland* standard. Although we have previously cited defense counsel's waiver of earlier assignments of error, we do not find counsel's failure to object deprived Lewis of a fair trial. Thus, the seventh assignment of error is overruled.

In his eighth assignment of error, Lewis contends that the court's decision to allow the Lawrence County Sheriff to sit at the state's counsel table during the trial was prejudicial to him. We disagree. The state may choose a representative to be present throughout the proceedings. The fact that the current sheriff was not involved in the original investigation may be detrimental to the state, but we fail to see how that prejudices Lewis. Furthermore,

Lewis has cited no authority which would require a reversal for the court's decision to allow the sheriff to sit at the prosecution table and we are aware of none. Thus, we find no prejudicial error and the eighth assignment of error is overruled.

In his final assignment of error, Lewis argues that he had shown all the necessary requisite elements to succeed on a motion for new trial and, therefore, the court below erred in not granting him leave to file a motion for one. We disagree.

A trial court's decision to grant or deny a hearing on a motion for new trial under Crim. R. 33(A) (2) shall not be disturbed on appeal absent a clear showing of an abuse of discretion. *See Toledo v. Stuart* (1983), 11 Ohio App. 3d 292, 293. An abuse of discretion connotes more than an error of law or judgment, it implies an unreasonable, arbitrary or unconscionable attitude. *State v. Moreland* (1990), 50 Ohio St. 3d 58, 61. Under this standard of review, we cannot find that the trial court abused its discretion.

Ohio Evid. R. 606(B) provides, in pertinent part, as follows:

"Inquiry into validity of verdict or indictment. Upon lip inquiry into the validity of a verdict ... a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict ... or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes."

This evidentiary rule embodies the *aliunde* rule which requires the introduction of evidence from a competent source other than a juror to impeach a jury verdict. *See* staff notes in Giannelli, Ohio Evidence Manual (1988) 23. Thus, the verdict of a jury may not be impeached with evidence by a member of the jury unless a foundation for its introduction is laid by competent evidence *aliunde*, or from some other source. *State v. Adams* (1943), 141 Ohio St. 423, 427. Such evidence, however, must come from a source possessing first hand knowledge and cannot be acquired by the court through affidavits of the jurors themselves, 1 Weissenberger, Ohio Evidence (1980) 22, Section 606.3.

The motion below relied on two items to convey evidence of juror misconduct. First, the affidavit of Thomas Weekly, the jury foreman, was submitted containing various allegations of juror misconduct and a statement to the effect that he had changed his mind concerning appellant's guilt beyond a reasonable doubt after signing the verdict form.[12] This affidavit, however, must be excluded from consideration under Evid. R. 606(B).

Lewis further relies on a letter sent to his attorney by a clergyman for the previously mentioned Mr. Weekly. This letter relates that Mr. Weekly was troubled by the outcome of the trial and came to discuss the matter with him. The letter then repeats many of the same allegations which were in Mr. Weekly's affidavit. Lewis contends that this letter constitutes sufficient *aliunde* evidence to set a foundation for the consideration of Mr. Weekly's affidavit. We disagree.

First, the clergyman has no first hand knowledge of the alleged juror misconduct. *See Weissenberger, supra.* Rather, he is merely serving as a conduit or straw-man through which Mr. Weekly may repeat his own allegations. Second, if we hold that such evidence lays a sufficient foundation for considering a juror's affidavit, then both Evid. R. 606(B) and the *aliunde* rule could always be circumvented merely by repeating allegations to a third party who can then submit his own affidavit to the court. Ultimately, the information all comes from one source; the juror. Such procedure is prohibited by Evid. R. 606(B).[13]

Thus, we cannot find any abuse of discretion in refusing to grant leave to file a motion for new trial under Crim. R. 33(A) (2). The assignment of error is, accordingly, overruled.

In conclusion, having sustained the first assignment of error in appellate Case No. 1920, that cause is remanded to the trial court for further proceedings not inconsistent with this opinion. Having overruled all assignments of

error in appellate Case Nos. 1924 and 1943, the judgments therein appealed from are affirmed. JUDGMENT IN CASE NO. 1920 IS REVERSED AND CAUSE IS REMANDED FOR FURTHER PROCEEDINGS.

JUDGMENTS IN CASE NOS. 1924 & 1943 ARE AFFIRMED.

ABELE, P.J., concurs in judgment.

HARSHA, J., concurs in judgment and opinion.

---

[1] We note Mr. Burd filed the brief on behalf of cross-appellant in Case No. 1920.

[2] This court consolidated Case Nos. 1924 & 1943 on March 22, 1990, upon motion of cross-appellant. Previously, on November 9, 1989, we denied cross-appellant's motion to consolidate case nos. 1920 & 1924. In order to simplify the procedural morass which these cases have turned into, we now consolidate, *sua sponte,* case no. 1920 with the two subsequent cases for purposes of this decision. *See* App. R. 3(B); *McCoy v. Hines* (Oct. 17, 1990), Adams App. Nos. 495 & 497, unreported, at fn. 1.

[3] We note several procedural problems with Lewis's brief(s) in Case No. 1924. On January 3, 1990, Lewis, without having obtained prior leave to do so, filed a brief exceeding the maximum page limitation set forth in L. App. R. 8. Contemporaneously, however, Lewis did file a motion to accept the brief exceeding that page limit. We denied said motion in February of 1990, and then gave Lewis until February 28th to refile his brief in a form which complied with rule. Lewis did not file his amended brief until March 1, 1990, at which time such brief was out of rule. Although the record does not indicate that Lewis was granted leave to file such brief out of rule, we shall, nevertheless, consider it.

A second problem is presented by Lewis's failure to include a separate statement of assignment of errors as required by App. R. 16(A) (2). Thus, we must rely on those set forth in scattered portions of his brief.

[4] In the absence of the required statement of assignment of errors, we have taken this from page four of Lewis's brief.

[5] On August 11, 1989, the trial court also dismissed count two of the indictment with prejudice. That same day, the court also ordered bifurcation of trials for the charges in the indictment and further ordered that counts three and five thereof would not be tried at the trial on the rape charge. Subsequently, on September 15, 1989, these charges were dismissed *nolle prosequi.* Therefore, only the conviction on the rape charge (count one) and dismissal of the assault charge (count four) are at issue herein.

[6] Thus, we note that the court below treated this motion as if it were, in fact, one for a new trial rather than *one for*

*leave to file* a motion for new trial. In that Lewis does not argue any error resulting from this mistake, we do not address it herein.

[7] We would note that Lewis's initial brief was filed on October 23, 1989, and his supplemental brief was filed on March 13, 1990. In the absence of leave of court having been granted pursuant to App. R. 16(C), and we can find none in the record, the filing of this supplemental brief was in error. Nevertheless, we have considered it anyway.

[8] Even before enactment of R.C. 2945.71(C) (2) and the decision in *Barker v. Wingo* (1972), 407 U.S. 514, reported cases at both state and federal levels suggested that rights to a speedy trial did not come into being absent a formal criminal proceeding. *See e.g. State v. Meeker* (1971), 26 Ohio St. 2d 9, 21 (Corrigan, J. Concurring), (constitutional provisions for a speedy trial have no application until after a formal prosecution has commenced); *Agree v. United States* (1969), 418 F. 2d 427, 429, (the right to speedy trial does not arise until prosecution has commenced); *Lucas v. United States* (1966), 363 F. 2d 500, 502, (normally the right to speedy trial attaches from the time a criminal charge is formally lodged against the accused); *Parker v. United States* (1958), 252 F. 2d 680, 681 *cert. den'd* 356 U.S. 964, (provisions of the sixth amendment contemplate a pending charge, not the mere possibility of a criminal charge).

[9] We note that there is no way of knowing what actually happened to the evidence. Lewis suggests that it was suppressed by the prosecution. The state argues that it was not suppressed, but lost over the years. We need not determine which of these was the case. Under *Brady,* suppression of material exculpatory evidence by the prosecution is a denial of due process of law. Similarly, by exempting the loss of potentially useful evidence from the *Brady* holding, the decision in *Youngblood* implies that the *loss* of material exculpatory evidence by the prosecution is also a denial of due process.

[10] Our review of the trial transcript shows additional impeachment evidence as follows:

Kimberly Hill's admission that she had lied to both the hospital and the sheriff's office concerning her sexual activity prior to the night of the alleged rape; also her admission that she had lied under oath to the grand jury on a previous occasion and her testimony that her sister had previously fabricated a rape charge in order to explain a teenage pregnancy.

[11] Furthermore, Lewis has not shown bad faith on the part of appellee in suppressing or loosing this potentially useful evidence as required by *Youngblood, supra* at 289.

[12] Nevertheless, the trial transcript clearly reveals all twelve jurors voting affirmatively for the verdict when polled.

[13] The Ohio Supreme Court recently considered and rejected a similar argument in *State v. Schiebel* (1990), 55 Ohio St. 3d 71, 75-76. Therein, the court held that "where an attorney is told by a juror about another juror's possible

misconduct, the attorney's testimony is incompetent and may not be received for the purposes of ... laying a foundation of evidence *aliunde.*" Thus, the information necessary to establish evidence *aliunde* "must be from a source which possesses *firsthand knowledge of the improper conduct.*" (Emphasis added.) *Id* at 75. In that the clergyman's letter submitted in the cause *sub judice* admitted that it was merely repeating comments made by the juror to him, the clergyman did not possess the requisite "first hand knowledge of improper conduct." Thus, our holding herein is consistent with *Schiebel.*