[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-Appellant Roger K. Berry appeals from his conviction on one count of breaking and entering in violation of R.C. § 2911.13(A) assigning two errors for review. First, Berry contends the trial court abused its discretion by permitting the arresting officer to testify that, inter alia, he "was familiar with" Berry, and by sustaining the State's objection to a question that sought to elicit a lay witness' opinion. Second, Berry argues that the trial court erred by admitting into evidence a video surveillance tape, a portion of which had been inadvertently erased while in the possession of the police. For the reasons that follow, Berry's conviction is affirmed.
On September 25, 1997, the Riverview Cleaners on Gettysburg Avenue in Dayton was the site of a breaking and entering. Wells Fargo Alarm Systems alarm investigator John Jones was dispatched to the business at about 1:18a.m., and performed a perimeter check of the premises. He noticed that a side door and one pane in a window situated above two solvent tanks at the rear of the building had been damaged. Jones notified the Dayton Police Department and Kaner Butler, the owner of the business, that an actual break-in had occurred. Shortly thereafter, Dayton Police Department officers Miller and Moreland arrived on the scene as did Butler.
The officers entered the building through the damaged side door and found the cash register open and coins strewn about the floor around it. After requesting that an evidence collection crew be sent to the premises, the officers, Butler, and Jones retrieved the surveillance video and watched it using the television and VCR Butler kept at the business. The tape disclosed that an individual had entered from the rear of the building, proceeded to the cash register, taken its contents eventually determined to be approximately $105, and exited out the back of the business. None of the four men could identify anyone on the videotape, not even themselves, because of the poor quality of the images recorded. There were no gaps in the recording at that time. From the visible damage to the building and the videotape, it was determined that the perpetrator gained entrance to the business via the rear window and exited through the side door.
Dayton Police Department evidence technician Edward Zawadniak dusted the inside and outside of the building for fingerprints. He was able to lift one partial palm print outside the business from near the top of one of the solvent tanks beneath the window used for access. No other prints lifted, inside or outside, were clear enough to be of any use in identifying the perpetrator.
Dayton Police detective Mark Bilinski was assigned to investigate the break-in. After viewing the surveillance tape, he took it to the crime lab to see if the images of the perpetrator's face could be enhanced and an identification made. Unfortunately, however, the portion of the tape sought to be enhanced was inadvertently erased instead. In spite of the poor quality of the video images, Bilinski noticed a resemblance between the perpetrator and Berry, with whom he was familiar from previous encounters in the course of his duties as a police officer. Bilinski knew Berry's fingerprints from prior arrests were on file, and subsequently asked detective Mark Cordle, whose responsibilities include fingerprint comparison, to compare Berry's known prints to the latent palm print lifted from the tank. Cordle did, and after identifying twenty-five to thirty common points of comparison, he determined that the prints were a match. (Only eight common points of comparison are needed to identify fingerprints as a match.) Berry was arrested and charged soon thereafter. Following a jury trial, Berry was convicted and sentenced to twelve months of imprisonment with credit for time served. This timely appeal followed.
 I.
The trial court erred and abused its discretion in admitting evidence offered by the State unduly suggesting that the police knew the real perpetrator and in excluding relevant evidence offered by Appellant to show he could not commit the crime.
In his first assignment of error, Berry claims the trial court abused its discretion by permitting Officer Bilinski to testify that he was familiar with Berry, that the individual on the surveillance tape resembled Berry, and that on that basis, only Berry's known prints were compared to the latent print found at the scene. Berry further argues that Bilinski's statement that the prosecutor approved the filing of breaking and entering charges against Berry was erroneously admitted into evidence. We are not persuaded.
We note first that Berry raised the issues concerning Bilinski's testimony that he was familiar with Berry and that the person on the videotape resembled Berry in a pre-trial motion inlimine. The motion was denied and Berry did not object to the admission of the evidence at trial, which was followed by a limiting instruction by the judge. "A denial of a motion inlimine does not preserve error for review. A proper objection must be raised at trial to preserve error." State v. Brown
(1988), 38 Ohio St.3d 305, 311-12, citing State v. Maurer (1984),15 Ohio St.3d 239, 259. Because Berry failed to preserve for review his opposition to those portions of Bilinski's testimony relating to his familiarity with Berry and Berry's resemblance to the perpetrator, we are not required to address the issue and accordingly decline to do so.
Next, Berry seems to argue that permitting Bilinski to testify that Berry's known fingerprints were the only ones compared to the latent print lifted at the scene, and that the prosecutor approved filing a charge of breaking and entering against Berry was error. Berry, however, stipulated that the fingerprints referred to as his "known prints" were in fact his prints and, in testifying, Bilinski carefully avoided any mention of Berry's previous arrest record and convictions. Furthermore, the statement concerning the prosecutor's approval of the charge was only one in a series of investigative steps described by Bilinski as leading to Berry's arrest, and was elicited from Bilinski as such. Moreover, in its opening statement the State acknowledged that the indictment is not evidence, and the trial judge reiterated that point and gave a limiting instruction to the jury at the close of evidence.
Berry does not argue that he was prejudiced by Bilinski's statements concerning his known prints and the prosecutor's approval of the charge. Instead, and without citing any authority, he makes broad statements suggesting admission of such testimony allows the police to be both judge and jury in a case and equating any such practice with permitting an expert witness to testify to a rape victim's credibility, which is prohibited. Unsure of his footing, or even his path for that matter, we are unwilling to follow where Berry seeks to lead us.
Also in his first assignment of error, Berry contends reversible error was committed by the trial court in sustaining the State's objection to Berry's question to Butler, the business owner, inquiring whether Butler thought it would be difficult for a large person to go through the window. Berry's question calls for opinion testimony by a lay witness. Such testimony is governed by Evid.R. 701 which reads as follows:
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
In order for a lay witness' opinion testimony to be admissible, therefore,
 The witness must have firsthand knowledge of the subject of his testimony and the opinion must be one that a rational person would form on the basis of the observed facts, * * * and it must aid the trier of fact in understanding the testimony of the witness or in determining a fact in issue.
Lee v. Baldwin (1987), 35 Ohio App.3d 47, 49. Here, Berry's question was improper for more than one reason. First, a foundation for the question was lacking inasmuch as no evidence had yet been presented concerning Berry's size, nor did Berry establish what exactly would constitute a "large person." Second, at the point in the trial when the question was asked, nothing in the evidence properly before the jury indicated that Butler's opinion was rationally based on his perception, i.e. that he had any personal knowledge about how large a person could actually fit through the rear window of his business, or the level of difficulty with which such a person could accomplish the feat. Furthermore, with the approximate dimensions of the window already in evidence, and Berry present in the courtroom, there is no reason to think that Butler's opinion on the matter would have assisted the jury in determining whether Berry could have entered the building through the window. In other words, Butler was in no better position that the jurors to arrive at a conclusion based upon the evidence presented and their own observations of Berry's physical being. Thus, we find no error by the trial court in sustaining the State's objection to Berry's question.
Berry's first assignment of error is overruled.
 II.
The trial court erred and abused its discretion in admitting a video surveillance tape which was materially altered.
In his second assignment of error, Berry claims admission of the videotape of the incident was an abuse of discretion since a portion of the tape had been inadvertently erased. He describes that segment of the video as "potentially exculpatory," and argues that its erasure deprived him of an opportunity to argue its exculpatory nature.
The Supreme Court of the United States has differentiated between "material exculpatory" evidence and "potentially useful" evidence in the context of suppressed or unpreserved evidence alleged to be exculpatory. Arizona v. Youngblood (1988),488 U.S. 51, 57. Ohio courts have followed the Supreme Court in this regard stating, "if the prosecution suppresses, or fails to preserve, material exculpatory evidence, then a criminal defendant's due process rights have been violated." State v.Lewis (1990), 70 Ohio App.3d 624, 634. Unless appellant can show bad faith on the part of the police, however, suppression or failure to preserve potentially useful evidence does not constitute a denial of due process of law. State v. Keith (1997),79 Ohio St.3d 514, 523, citing Youngblood, supra at 57-58. SeeLewis, supra; State v. Groce (1991), 72 Ohio App.3d 399; State v.Fort (July 18, 1997), Lucas App. No. L-96-299, unreported.
Exculpatory evidence is material for constitutional purposes only if (1) its exculpatory nature was known before it was destroyed, and (2) it is of such a nature that no comparable evidence could be reasonably produced by the defense. Californiav. Trombetta (1984), 467 U.S. 479, 488-489. Berry does not argue that either, much less both, of the foregoing are applicable to the inadvertently erased segment of the videotape, and his choice of words to describe the evidence, "potentially exculpatory," places it outside the definition of what may be considered material exculpatory evidence.
To prevail, therefore, Berry must show that in erasing the surveillance tape, the police acted in bad faith. No evidence of mal intent on the part of the police was produced at trial, however. In fact, quite the opposite is true. Bilinski repeatedly stated that the tape was accidently erased and testified that he was not even aware that the tape had been damaged at the crime lab until weeks later when he played it again. In his closing argument, counsel for Berry acknowledged the lack of bad faith on the part of the police by stating, "Now I'm not suggesting that [Bilinski] erased [the tape] on purpose. I don't believe that."
Nor do we agree with Berry's novel proposition that evidence damaged or altered with a total lack of animus on the part of the police should be deemed inadmissible. As the trial court stated when admitting the videotape into evidence, the remaining portions of the tape are intact, relevant, and therefore admissible. Consequently, Berry's second assignment of error is not well taken.
We have overruled both of Berry's assignments of error. The judgment of the trial court is accordingly affirmed.
WOLFF, J. and FAIN, J., concur.
Copies mailed to:
Karyn J. Lynn
D. K. Wehner
Hon. Dennis J. Langer