JOURNAL ENTRY AND OPINION
Defendant-appellant William Blankenship appeals from his conviction for one count of rape in violation of R.C. 2907.02 and one count of gross sexual imposition in violation of R.C. 2907.05. The appellant was sentenced to a term of incarceration of life without parole for rape, and to a consecutive four-year term of incarceration for gross sexual imposition. The court held a status hearing and found the appellant to be a sexual predator.
In the early morning hours of September 11, 1998, the appellant raped the victim, E.W. At the time of the rape, the victim was only nine years old[1]. The victim lives with her siblings; her mother, Marian Carroll; and Todd Ashbrook, her mother's boyfriend. The appellant, who is the victim's uncle[2], also lived in the home and performed babysitting services while Mrs. Carroll was at work. An amicable relationship remains between Mrs. Carroll and the victim's father.
E.W. testified that on the evening in question, the appellant entered her bedroom and told her to go downstairs because her mother wanted her. Once downstairs, he told her to go into the living room, take off her clothing, and lie down on the couch. The victim testified that He was on top of me. (T. 261) and that the appellant was not wearing clothing. E.W. stated that she was lying on her back. The front part of the appellant was on her and the appellant spread open her legs. She testified that He was going up and down on me. (T. 261). Specifically, the victim testified:
 Q. Now, when he was on top of you with your legs spread open, could you feel anything anywhere?
A. Yes.
Q. What did you feel?
A. His private area.
Q. Where was it?
A. By mine.
Q. What did his private area feel like?
A. Hard.
(T. 263).
E.W. heard her mother coming down the stairs and testified that She caught him. (T. 264). The appellant ran into the bathroom. Her mother entered the room and spoke with her as E.W. was dressing. As a result of this conversation, E.W. went upstairs to her mother's bedroom. Mrs. Carroll chased the appellant outside and down the street. The police were notified and the victim was taken to the hospital by her mother and her father. E.W. testified that she was sad and crying. She also testified that the appellant was not a good babysitter because he drinks.
On cross-examination, counsel questioned E.W. regarding her visit to the hospital:
 Q. Did they ask you if he stuck anything inside your mouth? Did they ask you about that?
A. Yes.
 Q. Did you answer them when they asked you that question.
A. Yes.
Q. Okay. Did he stick anything in your mouth?
A. Yes.
Q. What did he stick in your mouth?
A. His private area.
 Q. So that went in your mouth. What about in your behind? What do you call it, your butt?
A. My butt.
Q. Did he put anything in your butt?
A. Yes.
Q. What did he put in your butt?
A. His private area.
 Q. He put his private area. When you say his private area, are you talking about his penis? Is that what you call it? Or do you call it his wiener? What do you call it?
A. Private area.
 Q. You call it a private area. It was hard and he put it in your mouth?
A. Yes.
Q. He put it in your butt?
A. Yes.
 Q. He put it anywhere else? He put it in between your private parts or in your what do you call your private part? Your private parts, probably, right?
A. Uh-Huh.
Q. Your answer is yes?
A. Yes.
Q. He put it in there also?
A. Yes.
Q. Did he hurt?
A. Yes.
Q. How about when it was up your butt? Did that hurt?
A. Yes.
Q. When he put it in your mouth, did that also hurt?
A. Yes.
Q. Did he move up and down when he was in your mouth?
A. Yes.
Q. And in your butt?
A. Yes.
Q. And in your private parts?
A. Yes.
Q. So it hurt in all these places, right?
A. Yes.
Q. You told the doctor that?
A. Yes.
Q. And the police?
A. Yes.
(T. 277-280).
Upon further questioning, the victim reiterated that she was certain that Uncle Billy had placed his private parts in her mouth, in her butt and her private parts (T. 289). On re-direct examination, E.W. testified that this was the second time that the appellant had done this to her (T. 293). On further cross, counsel inquired as follows:
 Q. The time before, did he do the same thing he did on the time that brings us here? That is the night you went to the hospital. Was it the same thing?
A. Yeah.
Q. Can you see Uncle Billy over here?
A. Yes.
 Q. On that prior time he also put his private in your mouth?
A. Yes.
Q. In your butt?
A. Yes.
Q. In your private part?
A. Yes.
 Q. He didn't just put it between your legs? He put it up where you go to the bathroom, right?
A. Yes.
 Q. I think the report says it was just going between your legs. Now, this is up inside of you?
A. Yes.
 Q. It wasn't down between your knees when he was doing it?
A. No.
Q. You felt his hard part up inside of you?
A. Yes.
Q. On a prior occasion and on this occasion, right?
A. Right.
(T. 295-296). Dr. Thomas Lukens was the attending physician in the emergency department at Metro Health Medical Center the night the victim was examined. Dr. Lukens testified that the hospital records indicate that the victim was calm and socially amenable and that she denied any pain. The medical records also indicate the victim has a learning disability and a hearing impairment. The results of her examination showed a mild abrasion, tenderness and bruising at the posterior fourchette. There was also a mild abrasion at the right labia minora (T. 360). The record reveals through state's exhibit 4, on page two of the after-care information for the sexual assault patient form, on the line describing the external genitalia, that the intern wrote: erythema on labia minora (inside lips of vagina). See also testimony of Dr. Lukens (T. 369).
Dr. Lukens was asked to describe the make-up of female genitalia for the jury. The doctor stated:
 A. On the outside there is a ring of tissue you call the labia majora, which is the major tissue, which is why it has the name. Inside of that is the labia minora, which is a fleshier ring of skin which is on both sides. Both of those are external to the vaginal opening.
 The vaginal opening then is closed by a hymen until it is broken at some point, and incorporated in all this is the posterior area, is the posterior fourchette. It's more of an area rather than an anatomical structure. Then there is the anterior fourchette, which is where the labia minora and labia majora come together.
* * *
 Q. The labia minora are the two flaps that actually is the outer covering of skin and dry skin like you have on your hand?
A. That would be the labia majora.
 Q. In order to get to the labia minora, do you have to go through the labia majora to get to that particular area?
 A. Yes. The minora is more of a mucus type tissue, whereas the majora is dry skin, normal skin.
 Q. So that I understand this correctly, then, okay? The posterior fourchette, is that the connecting area between these two, or is that something else?
 A. Connecting area, but it is posterior to the vaginal opening.
(T. 361-363).
Dr. Lukens testified that there were no allegations made by the victim of an oral or anal assault. Dr. Lukens testified that in medical terms, penetration is when something is introduced into the vagina, past the hymen (T. 363). In Dr. Lukens opinion, based upon his training, experience, and education, the history of this victim, and on the examination of this victim, is that she was sexually assaulted (T. 365).
The appellant has set forth only two assignments of error. The first assignment of error:
 WILLIAM BLANKENSHIP'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS, WAS DENIED WHEN HE WAS CONVICTED OF AND SENTENCED FOR RAPE ON EVIDENCE WHICH WAS INSUFFICIENT AS A MATTER OF LAW.
In the appellant's first assignment of error, he asserts that the evidence regarding penetration of the victim was insufficient to support his conviction. The appellant essentially argues that there is no direct evidence of penetration because the medical evidence did not reveal blood or semen, the victim was not upset and did not complain of pain, and the medical evidence regarding the abrasions may be explained away by another trauma.
The Ohio Supreme Court has clarified the distinction between reviewing questions of manifest weight of the evidence and questions of sufficiency of the evidence. In State v. Thompkins (19 97), 78 Ohio St.3d 380, the court found that with respect to sufficiency of the evidence, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386. In addition, a conviction based upon legally insufficient evidence is a denial of due process. Thompkins, supra, citing to Tibbs v. Florida (1982), 457 U.S. 31, 45. As Justice Cook succinctly stated in the concurrence of Thompkins, a challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Our review is limited to construing the evidence in a light most favorable to the state and determining whether any reasonable trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Waddy (1992), 63 Ohio St.3d 424, 430.
In the case sub judice, the appellant was convicted of rape, which has been defined by the legislature in R.C. 2907.02, and states in pertinent part:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
It is pertinent to this appeal to consider the definition of sexual conduct as set forth in R.C. 2907.01:
 As used in sections 2907.01 to 2907.37 of the Revised Code:
 (A) Sexual conduct means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
This court must begin its analysis of the cases on point by noting that courts have consistently held that testimony, if believed, is sufficient to prove each element of the offense of rape. State v. Lewis (1990),70 Ohio App.3d 624. There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction. Id. citing to State v. Love (1988), 49 Ohio App.3d 88, 91 and State v. Gingell (1982), 7 Ohio App.3d 364, 365. See also In re: Fisher (June 25, 1998), Franklin App. Nos. 97APF10-1356 97APF11-1552, unreported where the court held that the victim's testimony alone was sufficient to support the conviction for rape. Accord, State v. Banks (1991),71 Ohio App.3d 214, 220. That medical records reveal no sign of damage to a victim's hymen, in light of unequivocal testimony from the victim, does not make the evidence insufficient as a matter of law. Lewis, supra. Further, we note that the Lewis court explicitly held:
 In the definition of sexual conduct, R.C. 2907.01(A) specifically states that penetration, however slight, is sufficient to complete vaginal or anal intercourse. Thus, this court, as well as others, have consistently held that evidence of slight penetration, entering the vulva or labia, is sufficient to support a rape conviction. See, e.g., State v. Nivens, 1996 Ohio App. LEXIS 2245 (May 28, 1996), Franklin App. No. 95 APA09-1236, unreported (1996 Opinions 2053, 2057); State v. Carpenter (1989), 60 Ohio App.3d 104, 105, 573 N.E.2d 1206. Moreover, a victim's testimony concerning penetration need not be corroborated by the medical evidence. See Nivens, 1996 Ohio App. LEXIS 2245 at *6 (Even without corroborating medical evidence, a victim's testimony that the perpetrator placed his penis in her vagina constitutes penetration.); Carpenter, supra (The presence of an intact hymen does not preclude a finding by a jury, upon other competent evidence, that a rape has been committed.). Finally, victim testimony related to penetration is sufficient to support a conviction for rape even where the victim's own testimony is conflicting on the issue. See, e.g., Nivens, 1996 Ohio App. LEXIS 2245 at *6 (victim's inconsistent testimony regarding penetration did not render evidence insufficient; victim's inconsistencies went to her credibility, which was properly to be resolved by the jury); State v. Nagor ski, 1994 Ohio App. LEXIS 6177 (Feb. 24, 1994), Franklin App. No. 93AP-792, unreported (1994 Opinions 548, 555) (despite victim's uncertain testimony regarding penetration, evidence was still sufficient); see, also, State v. Ramirez (1994), 98 Ohio App.3d 388, 394, 648 N.E.2d 845
(inconsistent statements by victim did not make conviction for felonious sexual penetration against the sufficiency of the evidence).
When applying these standards to the matter at hand, it must be concluded that the victim's testimony was more than sufficient to support the decision of the jury. E.W. testified with unequivocal clarity that the appellant vaginally, orally and anally raped her. He placed his private part in her mouth, in her butt, and in her private parts. When asked if he placed his private up where you go to the bathroom and up inside of you she answered in the affirmative (T. 296).[3]
While the victim's testimony here is conclusive, we reiterate this court's holding in State v. Logan (Oct. 3, 1996), Cuyahoga App. No. 69535, unreported: the fact that the medical examination produced no signs of trauma or tearing to the victim's vagina and that the victim's hymen was intact does not preclude a finding by a jury, upon other competent evidence, that a rape had been committed. Notwithstanding, in this particular instance, the victim's testimony is buttressed by the attending physician's medical opinion that she was sexually assaulted.
The appellant's first assignment of error is overruled.
The second assignment of error:
 WILLIAM BLANKENSHIP HAS BEEN DEPRIVED OF HIS CONSTITUTIONAL RIGHT NOT TO BE PLACED IN DOUBLE JEOPARDY FOR THE SAME OFFENSE BY HIS CONVICTIONS FOR RAPE AND GROSS SEXUAL IMPOSITION ARE (sic), UNDER THE FACTS OF THIS CASE, ALLIED OFFENSES OF SIMILAR IMPORT.
In this assignment of error the appellant asserts that he should not have been convicted for both rape and gross sexual imposition because under the facts of this case they are allied offenses. The state has conceded this as error.
The appellant's conviction for rape is affirmed. Case remanded for resentencing.
I am compelled to briefly respond to the dissent due to its many bizarre contentions. In an opinion redolent of Byzantine murkiness, the minority scrivener posits or implies the following:
 1) A thirteen year old victim who testified under oath that she was anally, orally, and vaginally raped; that testimony should be afforded diminished credibility because the victim has a learning disability, and as it appears from the record, that she may be developmentally disabled.
 Of course it is within the jury's province to determine the credibility of the witnesses and not the responsibility of a reviewing court.
 2) That the trial judge's instruction to the jury that neither penetration of the vagina nor rupture of the hymen are necessary to sustain a conviction for rape was error.
 Suffice it to say that the instruction was not erroneous and perchance if it were, there was no objection made by the appellant after said instruction was given. It is therefore waived unless plain error is manifest, which was not the case in the matter sub judice. Further, the minority scrivener's comment that the majority opinion implicitly concedes as much is gratuitous nonsense.
 3) That since the victim testified on cross-examination that she had been vaginally raped, which is evidence, and the fact that the prosecutor did not allude to that testimony on final argument, which is not evidence, the jury need not rely on that testimony and therefore the jury's verdict was necessarily inexact.
That deduction is totally without any foundation and should be disregarded.
This cause is affirmed in part and reversed in part.
The court finds there were reasonable grounds for this appeal. It is, therefore, considered that said appellant(s) and appellee(s) each pay one-half of the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
DIANE KARPINSKI, A.J., CONCURS WITH SEPARATE CONCURRING OPINION ATTACHED; ANNE L. KILBANE, J., DISSENTS WITH DISSENTING OPINION ATTACHED.
[1] E.W. testified that she has a learning disability and a hearing impairment.
[2] Franklin Carroll and the victim's mother Marian Carroll were in the process of a divorce at the time of the rape. Mrs. Carroll was living with her children and her boyfriend, Todd Ashbrook. Mr. Carroll has parented the victim from infancy although he is not her biological or adoptive father. The appellant is the half-brother of Mr. Carroll and thus he holds the family position of an uncle to the victim.
[3] There has been a suggestion that because this evidence was elicited on cross-examination, and because it was not raised by the state in closing argument, that somehow there is a waiver of this evidence. However, notwithstanding the fact that the testimony was elicited on by the appellant's counsel, the jury heard the evidence and was entitled to rely on it. Additionally, the law does not support the proposition that the state's closing argument in any way constitutes evidence. Thus, no matter what the state chose to argue or not argue in closing, the jury is still entitled to consider all evidence before it.