JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} Defendant Marious Sowell appeals from his convictions for aggravated burglary, tampering with evidence and having a weapon while under disability, and various specifications. For the reasons set forth below, we affirm.
 {¶ 2} On September 14, 2006, defendant and co-defendant, Nathaniel Harris were indicted in connection with the shooting of Stephen Hall and Chantez Moore at the View nightclub in Cleveland. Counts One and Two charged him with attempted murder, with one-year and three-year firearm specifications, a notice of prior conviction and a repeat violent offender specification. Counts Three through Six charged him with felonious assault (serious physical harm and serious physical harm with a weapon), with one-year and three-year firearm specifications, a notice of prior conviction and a repeat violent offender specification. Count Seven charged him with aggravated burglary, with one-year and three-year firearm specifications, a notice of prior conviction and a repeat violent offender specification. Counts Eight and Nine charged him with having a weapon while under disability. Counts Ten through Twelve pertained solely to co-defendant Harris, and Count Thirteen charged defendant with tampering with evidence.
 {¶ 3} Defendant pled not guilty. Defendant waived a jury trial only as to the charges of having a weapon while under disability, and the matter then proceeded to a joint trial on September 27, 2007.
 {¶ 4} The state's evidence indicated that, on August 27, 2006, defendant and co-defendant Harris were at a barbeque. Harris borrowed Andre Johnson's Range Rover. By *Page 5 
the early morning hours of August 28, 2006, the defendant and co-defendant were at the View, a nightclub located on Prospect Avenue in Cleveland. The shooting victims, Stephen Hall and Chantez Moore, were also at the nightclub.
 {¶ 5} Hall testified for the state but indicated that he did not want to do so and was under subpoena. As to the events surrounding the shooting, Hall stated that he had smoked marijuana and consumed tequila at the nightclub. According to Hall, there was a large crowd at the club and there were fights. He walked outside at closing time and heard someone say, "He got a gun."
 {¶ 6} Hall looked up and saw a man with dread locks coming from across the street with a weapon. Hall ran to the back of the lot and was shot. He then ran to the front of the lot to get help. He was hospitalized for his wounds. Hall testified that he does not know who shot him.
 {¶ 7} Chantez Moore testified that he is currently incarcerated in a federal institution and that he has numerous state drug charge convictions. As to the events preceding the shooting at issue, Moore indicated that he had smoked marijuana at his sister's house before going to the View nightclub. According to Moore, one of his friends fought with defendant at a different nightclub about one month before the shooting at issue. Other friends of Moore joined in that altercation and beat defendant.
 {¶ 8} Moore next saw defendant and do-defendant Harris at the View nightclub. One of Moore's friends swung at Harris, and Moore then joined the altercation. Moore had Harris *Page 6 
on the ground and continued to beat him. Moore heard shots and ran off, then noticed that he had been shot. He had a friend drive him to the hospital where he received treatment for multiple gunshot wounds.
 {¶ 9} Cleveland Police Det. Thomas Barnes was working a part-time job at the Residence Inn on Prospect. He was in full uniform. At approximately 2:30 a.m., he observed 50-60 people congregating outside the View. He then heard five to ten gunshots in rapid succession. According to Barnes, the shots all came from the same direction.
 {¶ 10} Barnes next observed two men run toward a Range Rover, which was parked across the street. The driver stuffed something under the front seat. Det. Barnes drew his weapon and attempted to detain the men, but they sped off in the direction of East 9th Street. Barnes radioed for police assistance in apprehending the men then called for an ambulance for the injured patrons. Barnes identified both defendant and co-defendant Harris as the men who fled in the Range Rover.
 {¶ 11} Cleveland Police Officers Herbert Ross and Patrick Petranek established that they were proceeding southbound on East 9th Street and were almost struck by a Range Rover, which ran a red light. The officers stopped the vehicle but the driver, identified as co-defendant Harris, complained that they were fleeing from an area where there had been a shooting. The officers had the vehicle pull over to the side of the street but it sped off as they approached. They followed the car to East 4th Street. This area had a barricade and the occupants of the car then fled on foot. Officer Ross observed the men reaching into their *Page 7 
waistbands as they fled toward the loading dock of the Hyatt Regency Hotel. He next heard a loud metal sound and, as he ran further, observed a door. He opened the door to continue the pursuit and observed a large grease vat off a hallway to the right. In a cursory check of the vat, he found only newspaper.
 {¶ 12} Michael Parks, a security officer for the Hyatt Regency Hotel, testified that from a closed circuit security camera, he observed two males enter the hotel through the loading dock. Parks approached the men, whom he later identified as defendant and co-defendant Harris, and asked them to leave the building. According to Parks, the men appeared frantic and Harris offered to give Parks $1,000 for helping them escape. Parks declined the money and had the men leave via the employee exit to Superior Avenue. When he returned to the security office, police officers were there with guns drawn looking for two men. They were apprehended a short time later.
 {¶ 13} One particle of gunshot residue consisting of lead, barium and antimony was recovered from one of defendant's hands. The state's witness, forensic scientist Martin Lewis, admitted that more than one particle is needed to make a positive finding in some laboratories. Other particles consisting of barium with antimony, lead with antimony, or individual particles of lead, antimony or barium were also recovered. The findings are consistent with defendant being in the vicinity of a gun, which was discharged within the previous four to six hours.
 {¶ 14} Parks prepared an incident report of the matter. He further established that he *Page 8 
did not see the men with weapons. Police arrived and searched the hotel, then left. At approximately 6:30 a.m., he observed two women in the loading dock area. One of the women, who Parks later identified as Monet Williams was on the telephone. Parks told the women to leave, but they refused to do so and explained that their cousin had left a lot of money there and they needed to find it. According to Parks, Williams was there for approximately forty minutes and it appeared that she was receiving directions on where to search from the person she was speaking to on the telephone. Parks next noticed the women near the grease trap and pointing to it.
 {¶ 15} Parks called the police to return to the hotel but the women were gone by the time the police arrived. At this time, the police ordered the grease vat to be drained completely. A Glock .40 caliber weapon with six live rounds of A-Merc .40 caliber Smith and Wesson ammunition was recovered from the vat. According to police, such a weapon may hold a maximum of eleven or sixteen rounds of ammunition.
 {¶ 16} Parks acknowledged that the hotel's fifteen-camera video surveillance system did not reveal that the men had weapons. There are some "dead spaces" between cameras which are not recorded, however. Parks testified that he viewed the tapes at the hotel. Several officers viewed them as well. The police did not request the video recordings, however, because the images were grainy, merely showed the men in the hotel and were neither inculpatory nor exculpatory, and the police did not have they proper system to view a copy of the tape, which could not be viewed on an ordinary video recorder. The tape was *Page 9 
subsequently taped over by the hotel.
 {¶ 17} Defendant rested and the trial court granted a judgment of acquittal in favor of both defendants on Count One, the attempted murder of Stephen Hall. The remaining charges pertaining to defendant (other than the weapon under disability charges) were presented to the jury.
 {¶ 18} The jury subsequently found defendant guilty of aggravated burglary and the firearm specifications as charged in Count Seven, and tampering with evidence as alleged in Count Thirteen. He was acquitted of the charges of felonious assault as set forth in Counts Three and Four, and the jury could not reach a decision regarding the felonious assault charges set forth in Counts Five and Six. The trial court subsequently found defendant guilty of having a weapon while under disability, as charged in Counts Eight and Nine and the repeat violent offender specification and notice of prior convictions appended to Count Seven. Defendant was sentenced to a total of eighteen years on the aggravated burglary charge, plus concurrent five-year terms on the remaining offenses. Defendant now appeals and assigns seven errors for our review.
 {¶ 19} Defendant's first and fifth assignments of error are interrelated and state:
 {¶ 20} "Due Process was violated and the accused was denied a fair trial, when material evidence of apparent exculpatory value was destroyed, which resulted in the accused being deprived of evidence that arguably could have been put to beneficial use in his defense." *Page 10 
 {¶ 21} "The court erred when it refused to dismiss the case for what was essentially a Brady violation."
 {¶ 22} In Arizona v. Youngblood (1988), 488 U.S. 51, 109 S.Ct. 333,102 L.Ed.2d 281, the United States Supreme Court held:
 {¶ 23} "[T]he Due Process Clause of the Fourteenth Amendment * * * makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * *. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57-58, 109 S.Ct. 333,102 L.Ed.2d 281. Accord State v. Geeslin, 116 Ohio St.3d 252,2007-Ohio-5239, 878 N.E.2d 1 (the destruction of materially exculpatory evidence violates a defendant's due process rights but if the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation).
 {¶ 24} Similarly, in Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215, the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or *Page 11 
to punishment, irrespective of the good faith or bad faith of the prosecution. The Brady Court spoke of such evidence as that which "would tend to exculpate" the defendant. Brady v. Maryland, supra, at 88.
 {¶ 25} However, the Brady rule does not apply to evidence that is merely "potentially useful." State v. Geeslin, supra. "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id., quoting Arizona v. Youngblood, supra.
 {¶ 26} Evidence is materially exculpatory only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."State v. Johnston (1989), 39 Ohio St.3d 48, 529 N.E.2d 898. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. Accord, California v. Trombetta (1984),467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed2d 413.
 {¶ 27} Evidence is not materially exculpatory if it is merely potentially useful to the defense. State v. Lewis (1990),70 Ohio App.3d 624, 634, 591 N.E.2d 854. Potentially useful evidence is evidence that may or may not have incriminated the defendant.
 {¶ 28} The burden is on the defendant to show the exculpatory nature of destroyed evidence. See, e.g., State v. Birkhold, Licking App. No. 01CA104, 2002-Ohio-2464.
 {¶ 29} In this matter, the record indicates that the video security system of the Hyatt Regency was operational on the night of the shooting and that this system recorded two men in the area near the loading dock and other locations of the hotel. From the undisputed *Page 12 
evidence, however, the images were extremely grainy, did not clearly depict either of the defendants, and simply showed them walking. From the foregoing, the defendant has not met his burden of demonstrating the exculpatory nature of the video. At best, the tape was merely potentially useful evidence. Further, the undisputed evidence demonstrated that the police viewed the tape at the hotel but, upon seeing the contents and upon learning that a special system is needed to view it, were no longer interested in using the tape as evidence in this matter. Thereafter, hotel staff recorded over the tape. There was absolutely no evidence that the tape was lost due to the bad faith of the police.
 {¶ 30} In accordance with all the foregoing, we reject the first and fifth assignments of error.
 {¶ 31} Defendant's second assignment of error states:
 {¶ 32} "The verdict finding Appellant guilty of aggravated burglary is against the manifest weight of the evidence and is contrary to law."
 {¶ 33} In State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 34} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a *Page 13 
question of mathematics, but depends on its effect in inducing belief. Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 35} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id., citing Tibbs v.Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652,663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. SeeState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717,720-721.
 {¶ 36} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 37} In this matter, we cannot say that the jury lost its way in convicting defendant of the offense of aggravated burglary. The evidence demonstrated that immediately after the shooting, defendant and Harris fled from police, ran to the Hyatt, entered the hotel and entered the kitchen area, and offered Parks $1,000 for assistance in getting out of the building. A handgun was later recovered from the grease vat, and shells recovered from the scene of the shooting matched shells test-fired from this weapon and a particle of gunshot residue was detected on defendant's hand. From the foregoing, a jury could properly *Page 14 
determine, consistent with the weight of the evidence, that defendants, by force, stealth or deception, trespassed in an occupied structure, or in a separately secured or separately occupied portion of the hotel, when others were present, with the purpose of committing another crime and while having a gun.
 {¶ 38} This assignment of error is without merit.
 {¶ 39} Defendant's third and seventh assignments of error are interrelated and state:
 {¶ 40} "The evidence finding Appellant guilty of tampering with evidence is not supported by sufficient evidence."
 {¶ 41} "The verdicts rendered by the court finding the appellant guilty of having a weapons [sic] under disability and of being a violent repeat offender were not supported by sufficient evidence."
 {¶ 42} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, supra. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. *Page 15 
 {¶ 43} The elements of tampering with evidence are set forth in R.C. 2921.12, which provides that no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.
 {¶ 44} The elements of having a weapon under disability require that the defendant must be found to have "knowingly" acquired, have, carried or used a firearm or dangerous ordnance, R.C. 2923.13(A), while being a member of certain groups. These groups include those convicted of felonies of violence, and those convicted of drug crimes.
 {¶ 45} The repeat violent offender specification is defined in R.C. 2929.01(DD) as follows:
 {¶ 46} "(1) The person is being sentenced for committing or for complicity in committing any of the following:
 {¶ 47} "(a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;
 {¶ 48} "(b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (DD)(1)(a) of this section."
 {¶ 49} "(2) The person previously was convicted of or pleaded guilty to an offense *Page 16 
described in division (DD)(1)(a) or (b) of this section.
 {¶ 50} In this matter, the evidence presented by the state demonstrated that, immediately following the shooting, defendant and co-defendant Harris fled from police, ran to the Hyatt, entered the hotel and proceeded to the kitchen area, and offered Parks $1,000 for assistance in getting out of the building. A handgun was later recovered from the grease vat, and shells recovered from the scene of the shooting matched shells test-fired from this weapon and a particle of gunshot residue was detected on defendant's hand. In addition, the state and defendant stipulated to defendant's prior conviction for aggravated robbery in violation of R.C. 2911.01, a felony of the first degree, in February 2001.
 {¶ 51} From the foregoing, we hold that, in reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of tampering with evidence beyond a reasonable doubt. Viewed in a light most favorable to the prosecution, the evidence indicated that defendants, having fled the scene of the shooting which police were investigating, entered the hotel a short time later, and dropped the gun linked to the shooting to be hidden into the grease vat, thereby tampering with this evidence.
 {¶ 52} We further hold that, in reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of having a weapon while under disability beyond a reasonable doubt. The state and the defense stipulated to defendant's 2001 conviction for aggravated robbery, a felony of violence, and *Page 17 
the evidence indicated that defendant had one particle of gunshot residue on his hand, the defendants were in the hotel and that the gun linked to the shooting was later recovered from the hotel grease vat. The court could rationally find that defendant knowingly acquired, had, carried or used a firearm or dangerous ordnance. This conviction is supported by sufficient evidence. We further hold that, in reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have determined that defendant is a repeat violent offender as defined in R.C. 2929.01(DD) and charged in R.C. 2941.149. Defendant was convicted of aggravated burglary, a felony of the first degree, R.C. 2911.11(B), and there was a stipulation regarding defendant's 2001 aggravated robbery conviction, an "offense of violence" under R.C. 2901.01(A)(9)(a). Such evidence is sufficient to establish the specification beyond a reasonable doubt. State v. Barkley (May 23, 2001), Summit App. No. 20278.
 {¶ 53} The third and seventh assignments of error are without merit.
 {¶ 54} Defendant's fourth assignment of error states:
 {¶ 55} "The Appellant was denied the effective assistance of counsel when his counsel failed to make a pretrial determination that material evidence, arguably exculpable, had not been preserved by the prosecutor and, indeed had been intentionally destroyed, which determination could very well have resulted in a dismissal of the charges."
 {¶ 56} In order to substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that: 1) the performance of defense counsel was seriously flawed *Page 18 
and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984), 466 U.S. 668,80 L.Ed.2d 674, 104 S.Ct. 2052; State v. Brooks (1986), 25 Ohio St.3d 144,495 N.E.2d 407.
 {¶ 57} As we have rejected the due process and Brady claims raised herein and have determined that at best, the missing evidence was only potentially useful and that there is no evidence that it was lost due to the bad faith of the state of Ohio, we find no trial error. The claim of ineffective assistance must therefore fail. See State v. Henderson
(1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237.
 {¶ 58} Defendant's sixth assignment of error states:
 {¶ 59} "The court committed plain error when it failed to correctly charge the jury on the [aggravated] burglary offense, Count 7, of the indictment."
 {¶ 60} As an initial matter, we note that there was no objection to this charge so we review only for plain error. We further note that inState v. Gardner, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, the Supreme Court stated:
 {¶ 61} "[A] defendant charged with burglary is not deprived of a unanimous verdict `simply because the jury was not required to agree unanimously as to the nature of the crime the defendant intended to commit at the time he entered unlawfully into the victim's building. In situations where `the alternatives of the mens rea [intent] component give rise to the same criminal culpability, it does not appear critical that the jury may have reached different *Page 19 
conclusions regarding the nature of the defendant's intent if such differences do not reflect disagreement on the facts pertaining to the defendant's conduct.' * * *
 {¶ 62} "As previously indicated, R.C. 2911.11(A) requires proof that the defendant trespass `with purpose to commit * * * any criminal offense.' Contrary to the view taken by the court of appeals in this case, we do not discern in this language a statutory requirement that the jury be instructed on the elements of whatever offense the defendant intended to commit. We agree with the Supreme Court of Washington, whose burglary statute is similar to Ohio's, that `the specific crime or crimes intended to be committed inside burglarized premises is not an element of burglary that must be included in the * * * jury instructions * * *.' (Emphasis sic.) State v. Bergeron, 105 Wash.2d at 16,711 P.2d 1000."
 {¶ 63} The instruction at issue in State v. Gardner, supra, was as follows:
 {¶ 64} "[Before you can find the defendant guilty of this offense, you must find beyond a reasonable doubt that] he did, by force, stealth or deception, trespass in an occupied structure, to-wit [Lee's apartment], or in a separately secured or separately occupied portion of the occupied structure, when another person, other than an accomplice of the offender, was present, with the purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, and did have a deadly weapon or dangerous ordnance, to-wit, a handgun, on or about his person or under his control."
 {¶ 65} Likewise in this matter, the jury was instructed as follows: *Page 20 
 {¶ 66} "Before you can find the defendants guilty, you must find beyond a reasonable doubt that * * * the defendants, by force, stealth or deception, trespassed in an occupied structure, or in a separately secured or separately occupied portion of an occupied structure, the Hyatt Hotel, when Michael Parks and/or guests and employees, not accomplices of the offender, were present, with the purpose to commit therein any criminal offense, and while having a deadly weapon or dangerous ordnance, to-wit, a gun or firearm on or about their person or under their control. (Tr. 977-978.)
 {¶ 67} From the foregoing, we find no plain error in connection with the trial court's instruction as to aggravated burglary. The sixth assignment of error is without merit.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 21 
KENNETH A. ROCCO, J., CONCURS.
 COLLEEN CONWAY COONEY, P.J., CONCURS IN JUDGMENT ONLY *Page 1