[Cite as *State v. Steele*, 2012-Ohio-3777.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-110 |
| JOSHUA STEELE | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Delaware County Court of Common Pleas, Case No. 11CR-I-08-0463

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      August 17, 2012

APPEARANCES:

For Plaintiff-Appellee
CAROL O'BRIEN
GREGORY TAPOCSI
Delaware County Prosecutor
140 N. Sandusky Street
Delaware, OH 43015

For Defendant-Appellant

SCOTT WOLF
Firestone, Brehm, Hanson & Wolf, LLP
15 West Winter Street
Delaware, OH 43015

*Gwin, J.*

{¶1}   Appellant Joshua J. M. Steele ["Steele"] appeals from the October 31, 2011 judgment entry of the Delaware County Court of Common Pleas convicting him after a jury trial of five counts of Unlawful Sexual Conduct with a Minor, two counts of Rape, and one count of Gross Sexual Imposition. Appellee is the State of Ohio.

*FACTS*

{¶2}   Beginning in 2006, Rich and Mindy Lyons, along with their three children Jonathan, Nicole, and victim J.L., lived on a rented farm. In 2009, Steele, Mr. Lyons' nephew, moved into the Lyons' home so Steele could be closer to his employment at a nearby golf course. Steele left for work daily at approximately 6:30 a.m. and returned to the home at approximately 3:00 p.m., at which time the family members would perform various chores, eat dinner, and watch movies. Due to a recent back surgery, Mr. Lyons went to sleep by 10:00 p.m. while Mrs. Lyons worked third shift at a local factory from 8:30 p.m. until 6:00 a.m.

{¶3}   After Mr. and Mrs. Lyons went to either sleep or work respectively, Steele, J.L., and her sister Nicole would often watch movies in the basement of the home. However, Nicole would go to bed at which time Steele would make his cousin J.L. touch him and have sex with him. This occurred almost every night. According to J.L., Steele first tried to persuade J.L. to engage in sexual activity by buying her items such as Monster energy drinks. When J.L. refused Steele's advances, he began molesting her by forcing J.L. to masturbate him and later progressed to forced oral and vaginal sex. J.L. testified that forced sexual encounters occurred in the living room, basement, and bedroom.

{¶4} Mr. and Mrs. Lyons were unaware of Steele's victimization of J.L. even though they viewed several suspicious activities that were later determined to be indicators of Steele's molestation of J.L. For example, Mrs. Lyons was awakened late one night by the family dog barking in J.L.'s room. Mrs. Lyons found Steele in the room supposedly to retrieve "movies." Further, Mr. Lyons viewed Steele alone with J.L. on one occasion during which Mr. Lyons observed Steele to have "pinned" a crying J.L. between their house and a line of cars. J.L. also began sleeping with her father or had the family dog sleep with her as well in an effort to try to stop Steele's unwanted sexual advances. Moreover, while Steele lived with the Lyons' family, J.L. was very depressed and refused to socialize with anyone, which was completely different from her "happy normal self' and her demeanor as a "happy go lucky kid."

{¶5} J.L. did not disclose Steele's criminal actions until roughly one year later because she was "scared" of him after he previously held a knife up to her arm and was further "worried about getting in trouble" by her parents. J.L. eventually told a friend about Steele's acts and the friend stated she would tell J.L.'s parents even if J.L. refused to do so. As a result, J.L. eventually disclosed to her parents on March 7, 2010, that Steele molested her. Mr. Lyons subsequently called the Delaware County Sheriff's Office. Detective Christina Burke was assigned to investigate J.L.'s case. Steele spoke to Detective Burke and denied all of the allegations.

*PROCEDURAL HISTORY*

**{¶6}** On March 25, 2011, an indictment (Case No. 11 CRI 03 0176) was filed in the Delaware County Common Pleas Court charging Steele, with four counts of rape, all violations of Ohio Revised Code Section 2907.02(A)(2), four counts of Unlawful Sexual Conduct with a Minor, all violations of Ohio Revised Code Section 2907.04(A), one count of Gross Sexual Imposition, a violation of Ohio Revised Code Section 2907.05(A)(1), and three counts of Gross Sexual Imposition, all violations of Ohio Revised Code Section 2907.05(A)(4).

**{¶7}** The original case was dismissed and Steele was re-indicted on August 26, 2011 (Case No. 11 CRI 08 0463). The new indictment charged Steele with five counts of rape, all violations of Ohio Revised Code Section 2907.02(A)(2), five counts of Unlawful Sexual Conduct with a Minor, all violations of Ohio Revised Code Section 2907.04(A), one count of Gross Sexual Imposition, a violation of Ohio Revised Code Section 2907.05(A)(1), and one count of Gross Sexual Imposition, a violation of Ohio Revised Code Section 2907.05(A)(4).

**{¶8}** Nine items retrieved from the Lyons' home were submitted to the Ohio Bureau of Criminal Identification and Investigation [BCI & I] for DNA testing. The first five items were pieces of physical evidence obtained from Steele's living quarters in the basement of J.L.'s home: a couch cover, a washcloth, a sleeping bag, a fitted sheet, and a flat sheet. The last four items submitted were DNA samples obtained from J.L., her sister Nicole, her brother Jonathan, and Steele to be used for comparison.

**{¶9}** According to the report, the sleeping bag was found to contain semen and was also found to be presumptive for the presence of blood. However, subsequent testing at BCI & I indicated that a probative DNA sample could not be obtained.

**{¶10}** During the course of trial preparation, the state learned the four other physical items taken from Steele's living quarters were also tested by BCI & I and tested positive for either semen or seminal fluid. At the final pre-trial conference held September 2, 2011, the state asked for a continuance of the September 6, 2011 trial date in order for the test results to be completed and supplied to Steel's attorney in compliance with Crim.R.16 (K). Steele objected to the continuance. As a result, the trial court denied the state's request to continue the trial and ruled the new evidence was not admissible at trial. (3T. at 270-271; 5T. at 470-471).

**{¶11}** Trial commenced on September 6, 2011. After the close of evidence on the first day of trial Steele's attorney received a copy of the DNA report. According to the report, the results of the DNA comparison reveal that the

Differential extraction of the couch cover (item 1.1) resulted in a mixture of at least two individuals and is consistent with contributions from Joshua Steele. No conclusions can be made regarding [J.L.], Nicole Lyons and Jonathon Lyons as possible contributors to the mixture." Furthermore, "the differential extraction of the washcloth (item 2.1) resulted in a single DNA profile from an unknown female" and that the "differential extraction of the fitted sheet (Item 4.1) and the flat sheet (Item 5.1) resulted in a single DNA profile from the same unknown male." Furthermore, the results revealed,

"[J.L.], Nicole Lyons, Jonathon Lyons and Joshua Steele are not the source of the DNA from the washcloth, the fitted sheet or the flat sheet.

**{¶12}** At trial, the State introduced a copy of a laboratory report produced by Sarah Glass, a forensic biologist with the BCI & I, as State's Exhibit 18. This evidence was limited to the evidence pertaining to the sleeping bag. In addition, J.L., her parents Richard and Mindy Lyons, therapist Marjan Cuckler, testified on behalf of the state.

**{¶13}** At the conclusion of the state's case-in-chief, the trial court granted Steele's Crim.R. 29 Motion for Acquittal regarding Count Twelve of the Indictment. Count Twelve concerned a previous occurrence of sexual conduct by Steele against J.L. at a location in Franklin County, which occurred sometime between 2001 and 2004. During this incident, J.L., who was age six at the time, stayed at the residence of Steele's parents while her parents were out of town. J.L. testified that during that visit, she was lying on her side on a bed when Steele lay behind her and placed his erect penis against her buttocks while both were clothed. The trial court noted Count Twelve was alleged to have occurred between 2001 and 2004 while the other counts occurred five years later in 2009 at a different location. Accordingly, the trial court granted Steele's Crim.R. 29 motion regarding Count Twelve.

**{¶14}** Steele testified in his own defense. His mother Pamela Steele testified concerning her knowledge of the facts. Norma Wells, a neighbor, testified as to Steele's character. Nicole Lyons, who is J.L.'s sister, testified on Steele's behalf as to her personal observations of Steele and J.L. The state then called Richard Lyons as a rebuttal witness.

**{¶15}** The jury returned with guilty verdicts on Count Two (Unlawful Sexual Conduct with a Minor, F3), Count Four (Unlawful Sexual Conduct with a Minor, F3), Count Five (Rape, F1), Count Six (Unlawful Sexual Conduct with a Minor, F3), Count Eight (Unlawful Sexual Conduct with a Minor, F3), Count Nine (Rape, F1), Count Ten (Unlawful Sexual Conduct with a Minor, F3), and Count Eleven (Gross Sexual Imposition(Force), F3). The jury made findings of Not Guilty on Counts One (Rape), Three (Rape), and Seven (Rape).

*ASSIGNMENTS OF ERROR*

**{¶16}** Steele raises four assignments of error,

**{¶17}** "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE DEFENDANT-APPELLANT'S CRIMINAL RULE 33 MOTION FOR A NEW TRIAL BASED UPON THE STATE'S AMENDMENT OF THE COMPLAINT.

**{¶18}** "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE DEFENDANT-APPELLANT'S MOTION FOR A RULE 29 ACQUITTAL.

**{¶19}** III. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE DEFENDANT-APPELLANT'S MOTION FOR A NEW TRIAL BASED UPON THE DISCOVERY OF NEW EVIDENCE WHICH WOULD HAVE BEEN KNOWN PRIOR AT OR PRIOR TO TRIAL BUT FOR A BRADY VIOLATION BY THE STATE OF OHIO.

**{¶20}** "IV. THE JURY'S GUILTY VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT THE TRIAL IN THIS MATTER."

I.

**{¶21}** In his first assignment of error, Steele maintains that the trial court erred in not granting him a new trial based upon the state's amendment of the Indictment.

**{¶22}** In the case sub judice, at the close of the state's presentation of evidence and immediately prior to resting its case, the state moved to amend the time period alleged in the indictment pursuant to Criminal Rule 7(D). The amendment expanded the time period contained in the Indictment from "May 1, 2009 through September 1, 2009," to "March 1, 2009 through September 1, 2009." (5T. at 450).

**{¶23}** Crim.R.33, provides the procedure for obtaining a new trial, state, in part,

**(A) Grounds**

A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;

(3) Accident or surprise which ordinary prudence could not have guarded against;

(4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the

verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified;

(5) Error of law occurring at the trial;

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

* * *

**(E) Invalid grounds for new trial**

No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:

(1) An inaccuracy or imperfection in the indictment, information, or complaint, provided that the charge is sufficient to fairly and reasonably inform the defendant of all the essential elements of the charge against him.

(2) A variance between the allegations and the proof thereof, unless the defendant is misled or prejudiced thereby;

(3) The admission or rejection of any evidence offered against or for the defendant, unless the defendant was or may have been prejudiced thereby;

(4) A misdirection of the jury, unless the defendant was or may have been prejudiced thereby;

(5) Any other cause, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial.

{¶24} The decision whether to grant or deny a motion for mistrial lies within the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion that has adversely affected substantial rights of the accused such that a fair trial is no longer possible. *State v. Garner,* 74 Ohio St.3d 49, 656 N.E.2d 623, 1995-Ohio-168; *State v. Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900(1988); *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490(2nd Dist. 1988).

{¶25} Steel's argument concerns the amendment of the Indictment to include the months of March and April 2009. Steele argues that the state "amended an element of the offense which it failed to prove in its case in chief." [Appellant's Brief at 6].

{¶26} Specificity as to the time and date of an offense is not required in an indictment. Under R.C. 2941.03: "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The state is not required to prove that an offense occurred on any specific date, but rather may prove that the offense

occurred on a date reasonably near that charged in the indictment. *State v. Adams,* 5th Dist. No. 02-CA-00043, 2002-Ohio-5953 at ¶ 8.

**{¶27}** If such is not fatal to an indictment, it follows that impreciseness and inexactitude of the evidence at trial is not *"per se* impermissible or necessarily fatal to a prosecution." *State v. Robinette*, 5th Dist. No. CA-652, 1987 WL 7153(Feb 27, 1987). The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend himself. *State v. Sellards,* 17 Ohio St.3d 169, 478 N.E.2d 781(1985); *State v. Gingell*, 7 Ohio App.3d 364, 368, 455 N.E.2d 1066, 1071(1st Dist. 1982); *State v. Kinney*, 35 Ohio App.3d 84, 519 N.E.2d 1386(1987).

**{¶28}** As this court has noted: "[t]ime is neither essential nor an element of the crime of sexual battery." *State v. Robinette, supra.* In *Robinette,* this court stated,

> We note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. *State v. Humfleet* (Sept. 9, 1985), Clermont App. No. CA84-04-031, unreported, at 15. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances.

**{¶29}** In *State v. Sellards*, the Supreme Court gave two examples of when the failure to provide specific dates and times could be prejudicial to the accused. The court first noted that if the age of the victim were an element of the crime with which the accused had been charged and the victim bordered on the age required to make the conduct criminal, then the failure to provide a more specific time frame would be prejudicial. This is true because "specific dates of sexual conduct might well have become critical to the accused's ability to prepare a defense, since sexual conduct toward one thirteen years of age or older would not constitute the offense of rape as defined in the charged section of the criminal code, R.C. 2907.02(A)(3)." *Sellards,* 17 Ohio St.3d at 172, 478 N.E.2d at 785. The second situation is where "the defendant had been imprisoned or was indisputably elsewhere during part but not all of the intervals of time set out in the indictment. Again, under such circumstances, the inability of the state to produce a greater degree of specificity would unquestionably prejudice the defense." Id. The *Sellards* court noted,

> The record in this case does not indicate that the failure to provide the accused with a specific date was a material detriment to the preparation of his defense. In this regard, we note that while appellee claims on appeal that the inexactitude of the indictment and bill of particulars as to date denied him the ability to present an alibi defense, appellee never filed a notice of intent to rely on an alibi as is required by Crim.R. 12.1. (Cf. *State v. Dingus* [1970], 26 Ohio App.2d 131, 137, 269 N.E.2d 923 [55 O.O.2d 280]; *Gingell, supra,* at 368, 455 N.E.2d 1066.)

17 Ohio St.3d 169, 478 N.E.2d 781(1985).

{¶30} In the case at bar, Steele could have, but did not, request a continuance in response to the trial court's decision to amend the indictment. Further, we find that Steele was fully aware the time during which the crimes were alleged to have occurred is the time that he lived in the Logan's home. Steele did not deny that he lived there. Steele did not file a notice of alibi for any of the period set forth in the original indictment. J.L. testified at trial and Steele fully cross-examined her concerning the time during which the crimes had occurred and the fact that the dates included the spring and summer months. (4T. at 336-339; 354-357).

{¶31} Steele has not demonstrated that the inclusion of March and April 2009 in the case was material to any defense theory he put forth at trial; rather he makes only a generalized assertion.

{¶32} The inexactitude of temporal information did not truly prejudice Steele's ability fairly to defend himself. In addition, we find that Steele was adequately apprised of the crimes against him and was not denied a fair trial.

{¶33} Accordingly, the trial court did not abuse its discretion in denying Steele's motion for a new trial.

{¶34} Steel's first assignment of error is overruled in its entirety.

## II. & IV.

{¶35} Because Steele's second and fourth assignments of error each require us to review the evidence, we shall address the assignments collectively.

{¶36} In his second assignment of error, Steele alleges that the trial court erred in not granting his Crim. R. 29 motion for acquittal. In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court

focuses on the sufficiency of the evidence. See, e.g., *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974(1995); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991).

**{¶37}** In his fourth assignment of error, Steele maintains that his convictions are against the sufficiency of the evidence and against the manifest weight of the evidence, respectively.

**{¶38}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, _U.S._, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶39}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue

which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶40}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶41}** In the case at bar, Steele was convicted of Rape, Unlawful Sexual Conduct with a Minor, and Gross Sexual Imposition.

**{¶42}** In order to convict Steele of Rape pursuant to R.C. 2907.02(A)(2), the state had to prove he engaged in sexual conduct with J.L. by force or threat of force.

**{¶43}** "Corroboration of victim testimony in rape cases is not required. See *State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson,* 112 Ohio St .3d 210, 217, 2006-Ohio6404 at ¶ 53, 858 N.E.2d 1144, 1158.

**{¶44}** In the case at bar, J.L. testified to specific acts occurring in the living room, basement and bedroom. Steele forced her to touch his erect penis and then to have oral or vaginal sex.

**{¶45}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Steele had sexual conduct with J.L. and further that he committed the crimes of Rape. We hold, therefore, that the state met its burden of production regarding each element of the crimes of rape and, accordingly, there was sufficient evidence to support Steele's convictions for Rape.

**{¶46}** In addition to Rape, the jury convicted Steele of Unlawful Sexual Conduct with a Minor pursuant to R.C. 2907.04, which provides,

(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

**{¶47}** "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

**{¶48}** In the case at bar, Counts Two and Eight of the Indictment were alleged to be vaginal intercourse; Count Ten was alleged to be fellatio. Count Ten was found to be an allied offense of Count Nine (Rape). Therefore, Steele received no sentenced on the charge of Unlawful Sexual Conduct with a Minor as found in Count Ten, the state choosing instead to sentence Steel on the Rape as found in Count Nine.

**{¶49}** The jury found Steele not guilty of Rape as alleged in Counts Three and Seven, choosing instead to find Steele Guilty of the Unlawful Sexual Conduct with a Minor charges in Counts Two and Eight.

**{¶50}** J.L. testified that Steele forced her to have vaginal intercourse in the living room, in which he used a blanket to cover-up; the basement during which he used a sleeping bag to cover-up ; and in J.L.'s bedroom.

**{¶51}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that

Steele had sexual conduct with J.L. and further that he committed the crime of Unlawful Sexual Conduct with a Minor, as alleged in Counts Two, Eight and Ten. We hold, therefore, that the state met its burden of production regarding each element of the crimes of Unlawful Sexual Conduct with a Minor. Accordingly, there was sufficient evidence to support Steele's conviction for Unlawful Sexual Conduct with a Minor, as alleged in Counts Two, Eight and Ten.

{¶52} Steel was also convicted of Gross Sexual Imposition pursuant to R.C. 2907.05(A)(1), which prohibits "sexual contact" when the offender purposely compels the other person to submit by force or threat of force. "Sexual Contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person". R.C. 2907.01. Accordingly, touching the "erogenous zone" is what is prohibited.

{¶53} J.L. testified that during the living room incident, Steele grabbed her hand and pulled it over to his penis.

{¶54} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Steele had sexual contact with J.L. and further that he committed the crime of Gross Sexual Imposition. We hold, therefore, that the state met its burden of production regarding each element of the crimes of Gross Sexual Imposition. Accordingly, there was sufficient evidence to support Steele's conviction for Gross Sexual Imposition.

{¶55} In addition to J.L.'s testimony, we note the state presented circumstantial evidence to support the charges. J.L.'s mother and father testified as to her demeanor

before, during, and after Steele's repeated sexual assaults. Evidence was presented to show that J.L. strangely began sleeping in her parents' bed while Steele was staying with the family. J.L.'s father testified that he was only awakened by J.L. one time while Steele was living at the residence during which J.L. crawled into his bed, began crying, and refused to tell her father the reasons. Further, forensic scientist Sarah Glass described how she located semen from a sleeping bag in the basement of the home at issue.

{¶56} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

{¶57} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may

take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the [judge] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶58} In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶59}** Although Steele cross-examined the witnesses and argued that J.L. lacked credibility and had made false allegations because she was jealous of her sister's relationship with Steele, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990).

**{¶60}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost their way nor created a miscarriage of justice in convicting Steele of the charges.

**{¶61}** Steele's second and fourth assignments of error are overruled in their entirety.

III.

**{¶62}** In his third assignment of error, Steele argues that the failure of the state to provide him before trial with the results of DNA testing concerning four items taken from his living quarters at the Lyons' home was prejudicial error. Steele contends that the state withheld this evidence from him in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215(1963).

**{¶63}** Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. See 373 U. S., at 87. The Supreme Court has explained, "evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone* v. *Bell*, 556 U. S. 449, 469–470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). A reasonable probability does not mean that the defendant "would more likely than not have received a different verdict with the evidence," only that the likelihood of a different result is great enough to "undermine [] confidence in the outcome of the trial." *Kyles* v. *Whitley*, 514 U. S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (internal quotation marks omitted).

**{¶64}** In *State v. Wickline*, 50 Ohio St.3d 114, 552 N.E.2d 913(1990), the Ohio Supreme Court rejected a claim that the state's failure to provide exculpatory information to the defendant prior to trial was a reversible *Brady* violation for three reasons. First, the Court noted that in *United States v. Agurs* (1976), 427 U.S. 97, 103,

96 S.Ct. 2392, 2397, 49 L.Ed.2d 342, the United States Supreme Court noted that the rule of *Brady* applies to situations involving the discovery, after trial, of information which was known to the prosecution but unknown to the defense. In *Wickline,* the alleged exculpatory records were presented during the trial, and therefore no *Brady* violation existed. 50 Ohio St.3d at 116, 552 N.E.2d 913. *Accord, State v. Hanna,* 95 Ohio St.3d 285, 767 N.E.2d 678, 2002-Ohio-2221, ¶82; *State v. Green*, 90 Ohio St.3d 352, 372, 738 N.E.2d 1208(2000).

**{¶65}** Second, the court in *Wickline* noted that Crim. R. 16(E)(3) provides:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

**{¶66}** The court held that the appellant could have pursued less drastic means than seeking a new trial. *Id.* The appellant argued that no remedial order could have ensured his right to a fair trial because the leading witness against him had already testified. The court concluded that pursuant to Crim. R. 16(E)(3), the trial court was empowered to order the return of the witness and make her available for continued cross-examination. *Id.* at 117, 552 N.E.2d 913.

**{¶67}** Finally, the *Wickline* court concluded that the appellant had failed to show how the outcome of his trial would have been different had the materials been disclosed prior to trial. *Id.* In determining whether the prosecution improperly suppressed evidence

favorable to an accused, the evidence is material only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. *Id.,* citing *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898(1988), paragraph 5 of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

**{¶68}** As in *Wickline,* Steele was given access to the complete report during trial, and, therefore, a *Brady* violation did not occur. While it is unclear whether counsel looked at the report during the trial, had counsel done so when it was made available to him and believed the information therein was material Steele could have asked the trial court to revisit the prior ruling sustaining Steel's request that the report not be admissible. "*Brady* applies only to material discovered after trial because the defendant, if he chooses to, can generally ensure that material discovered prior to or during trial will be entered into evidence and is, thus, not substantially prejudiced." *State v. Aldridge*, 120 Ohio App.3d 122, 146, 697 N.E.2d 228(2nd Dist. 1997).

**{¶69}** At trial, Steele did argue that the DNA evidence did not match him. (6T. at 679). He further suggested that the DNA might belong to someone else from whom a sample had not been obtained for comparison. (Id. at 685). Thus, Steele has not demonstrated a reasonable probability of a change in the outcome had he been given the entire report prior to the start of the trial.

**{¶70}** Steele's third assignment of error is overruled in its entirety.

**{¶71}** Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Gwin, J.,

Delaney, P.J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE

WSG:clw 0731

[Cite as *State v. Steele*, 2012-Ohio-3777.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                            :

            Plaintiff-Appellee        :

                               :

-vs-                                     :         JUDGMENT ENTRY

JOSHUA STEELE                            :

            Defendant-Appellant       :         CASE NO. 2011-CA-110

 

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed.  Costs to appellant.

_____

HON. W. SCOTT GWIN

_____

HON. PATRICIA A. DELANEY

_____

HON. JOHN W. WISE